**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KEITH DODDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V | § | CIVIL ACTION NO. H-14-00297 |
| | § | |
| TERRACON CONSULTANTS, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Keith Dodds, an at-will employee who worked as a soil driller for Terracon Consultants, was fired for refusing to work over a weekend. Dodds contends that a United States Department of Transportation regulation barring employees from driving commercial vehicles after working 60 hours in 7 days prevented him from working that weekend. Dodds sued Terracon under *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985), which prohibits an employer from firing an employee based solely on his refusal to perform an illegal act. After discovery, Terracon moved for summary judgment, arguing that it did not require Dodds to perform an illegal act and that *Sabine Pilot* did not apply because Dodds has a statutory remedy under the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105 *et seq.* (Docket Entry No. 17). Dodds responded, and Terracon replied. (Docket Entry Nos. 19, 22).

Based on the motion, the response, the parties' arguments, the record, and the applicable law, the court denies Terracon's motion. The parties are ordered to appear for a pretrial scheduling conference on **May 26, 2015**, in Courtroom 11-B, at 5:00 p.m.

The reasons for the ruling is explained below.

1

**I.     Background**

Keith Dodds started working as a soil-sample driller for Terracon in 2007. (Docket Entry No. 9, ¶ 7). In 2013, Dodds worked out of Terracon's office in Conroe, Texas, north of Houston. (Docket Entry No. 17, Ex. A, at 38). As a driller, Dodds supervised a crew collecting soil samples for Terracon's structural engineers to test. The test results would be used to design buildings and other structures, such as pipelines, and supporting infrastructures. Each drilling crew included a driller, a helper, and a logger. (*Id.*, Ex. A, at 40).

Dodds and his crew used a long-haul trailer truck to transport the Conroe office drill rig to and from drilling sites. Dodds held a commercial driver's license and was the only crew member who could drive the long-haul truck. (*Id.*, Ex. A, at 42). Dodds received an hourly wage. He was paid for the time he spent driving to and from the Conroe office and the drill sites as well as for the time spent working at the drill sites. (*Id.*, Ex. B, ¶ 5). During his employment with Terracon, Dodds traveled with his crew and the rig to drilling jobs in Texas, Louisiana, and Arkansas. (*Id.*, Ex. A at 44-45).

The United States Department of Transportation ("DOT") "hours of service" regulation prohibits drivers from operating a commercial vehicle after working 60 hours in a 7-day period. *See* 49 C.F.R. § 395.3(b). A driver may "reset the clock" and resume driving, but only after "an off-duty period of 34 or more consecutive hours that includes two periods from 1:00 a.m. to 5:00 a.m." *Id.* § 395.3(c)(1). A driver's activities "while operating a commercial motor vehicle" in violation of the rule that lead "or could have led to death or serious injury" may result in criminal penalties up to $2,500. *See* 49 U.S.C. § 521(b)(6).

On Monday, September 9, 2013, Dodds left Conroe with a drilling crew to finish working on a project in West Texas. (Docket Entry No. 17, Ex. A, at 77-78). The drive took about eight hours. (*Id.* at 105). They began drilling on Tuesday morning and continued throughout the week

until around 1:00 p.m. on Friday, September 13. (Docket Entry No. 17, Ex. A, at 77-78). They did not finish the drilling project. Dodds estimates that he worked a total of 58 hours, or 2 hours short of the DOT limit, during this 5-day period. (Docket Entry 18-4, at 1-3).[1] Dodds and his drilling crew planned to return to Conroe for the weekend. Dodds was celebrating a wedding anniversary and intended to spend it with his wife. The crew planned to return to the drill site the following Monday. Dodds and the drilling crew left the long-haul truck and the drilling rig at the site in West Texas and drove a different vehicle to San Angelo, where they had lunch and looked for replacement parts. They left San Angelo for Conroe around 3:00 or 3:30 p.m., with Dodds as a passenger. (Docket Entry No. 17, Ex. A, at 87-89).

Dodds's Conroe Office Manager, Mark McClintock, tried to email and telephone Dodds that Friday afternoon, but Dodds's phone service in West Texas was poor. (*Id.*, Ex. A at 101; Docket Entry No. 18-6, ¶¶ 9-16). McClintock had recently received an urgent request from a client needing work completed in The Woodlands, located between Conroe and Houston. (Docket Entry No. 18-6, ¶ 6-8). McClintock sent the following email to Dodds at 3:45 p.m.:

> **Subject**: need to stay on project until you are done – don't come home – call me to discuss
>
> Keith,
> I know it is short notice but we need to get drilling on The Woodlands projects ASAP. Yatish needs you to finish the group of borings that you are currently working on [in West Texas] before you start drilling here – so I need you to work the weekend and get them finished as soon as possible, hopefully by Tuesday or Wednesday. He says that he has inspectors available to be on site 12 hours per day so you can work longer hours if need be. I have left several messages and emails – please call me to discuss. Also, check the GPS on the dodge as it is not registering its location. I have talked with Jacob [another crew member], he says he can

---

[1] Terracon disputes this time estimate. It argues that Dodds had only worked 48.5 hours at this point. But Terracon admits that it relies on the timesheets its employees complete to track the hours actually worked. (Docket Entry 18-6, ¶ 4). Dodds's time sheets show that he worked 58 hours. (Docket Entry 18-4, at 1-3). This disputed fact is resolved in Dodds's favor for the purpose of deciding the summary judgment motion.

> drop the samples in San Antonio and return to [work] tomorrow, but I have told him to get his instructions from you.

(Docket Entry No. 18-6, at 9).

> Dodds responded at 4:56 p.m.:
>
> > Last year on Sept 12th I was sent to OK City for training. You never heard any complaint from me. This year I have plans made for my wedding anniversary, unfortunately I am unable to work.

(Docket Entry No. 18-6, at 10).

> McClintock replied:
>
> > We ask for all requested time off to be in writing. My understanding is that you too[k] last weekend off for your anniversary. If you choose not to work this weekend, bring the rig back and see me first thing Monday morning!

(*Id.* at 10).

The two spoke a short time later, as soon as Dodds was in an area with phone service. McClintock instructed Dodds to return to San Angelo to finish the job there so that he could start the job in The Woodlands as soon as possible. (Docket Entry No. 17, Ex. A at 98-99). Dodds told McClintock that he could not work over the weekend because he was near his 60-hour DOT limit. (*Id.*, Ex. A at 98:19-23). McClintock told Dodds to go back to San Angelo and "get a hotel." (*Id.*, Ex. A at 102). Dodds refused. Terracon argues that McClintock told Dodds to get a hotel "so his hours could reset." (Docket Entry 18-6, ¶ 16). Dodds disputes this fact, arguing that even if he returned to San Angelo to get a hotel, he could not "work the weekend" as instructed and have had enough off-duty time to reset his hours and comply with the DOT limit. The conversation ended abruptly, which Dodds blames on poor cell phone service.

McClintock then sent the following email to Dodds's project supervisor, Yatish Jakatimath:

> > Keith finally called and said he cannot work this weekend. I said he has too [sic], he said no. I have told him if he chooses not to

4

>work this weekend then he needs to bring the rig back to Conroe. I expect that I will probably dismiss him from Terracon on Monday. Please keep this confidential—I just want to warn you what will probably be happening.

(Docket Entry No. 20, at 33).

Dodds returned to Conroe. He did not call McClintock back that evening or weekend. (Docket Entry No. 18-6, ¶ 17). McClintock sent Dodds an email the next morning, Saturday, directing him to come to the office first thing Monday morning instead of returning to West Texas. (*Id.* ¶ 18). On Monday, McClintock fired Dodds. (*Id.*).

Dodds's termination report from Terracon stated that he was terminated for "Failure To Meet Goals." The report included the following comments from McClintock:

>We have had ongoing issues with getting Keith taking direction and managing his crew's productivity. On Friday, September 13, 2013, he was notified late in the day that he needed to complete the job he was working on in west Texas before returning to Conroe. He ignored my instructions.

(Docket Entry No. 20, at 37).

In January 2014, Dodds sued Terracon in Texas state court, alleging wrongful discharge under *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d at 735, which prohibits firing an employee because he refused to perform an illegal act. Dodds alleged that he was fired solely for refusing to violate the DOT "hours of service" regulation. (Docket Entry No. 1, at 7). Terracon timely removed on the basis of diversity jurisdiction, and Dodds filed an amended complaint asserting the same claim. (Docket Entry Nos. 1, 9). After discovery, Terracon moved for summary judgment, arguing that McClintock did not require Dodds to violate the DOT regulation and that *Sabine Pilot* does not allow a cause of action when there is a separate statutory remedy. (Docket Entry No. 17). Dodds responded, and Terracon replied. (Docket Entry Nos. 19, 22).

The parties' arguments are analyzed below.

## II.     The Legal Standard for Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, — F.3d —, 2015 WL 1600689, at *2 (5th Cir. Apr. 8, 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at *2 (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotations omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 2015 WL 1600689, at *2 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 2015 WL 1600689, at *2.

### III. Analysis

Terracon argues that summary judgment is appropriate because: (1) there are no genuine factual disputes material to determining whether Dodds was instructed to violate the DOT 60-hour regulation; and (2) *Sabine Pilot* does not apply when, as here, a statutory remedy exists.

#### A. A Genuine Factual Dispute

Under Texas law, an employer may "terminate an at-will employee without fear of legal repercussions for a good reason, a bad reason, or no reason at all." *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 502 (Tex. App.-Houston [14th Dist.] 2008, pet. denied) (citing *Cnty. of Dallas v. Wiland*, 216 S.W.3d 344, 347 (Tex. 2007)). *Sabine Pilot* establishes a common-law exception to the employment at-will doctrine, prohibiting an employer from firing an employee solely because that employee refused to perform an illegal act. 687 S.W.2d at 735. A wrongful termination claim under *Sabine Pilot* requires a plaintiff to prove that: (1) he was required to commit an illegal act that carries criminal penalties; (2) he refused; (3) he was discharged; and

7

(4) the sole reason for his discharge was his refusal to commit the unlawful act. *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (citing *Sabine Pilot*, 687 S.W.2d at 735).

"An employer who discharges an employee both for refusing to perform an illegal act and for a legitimate reason or reasons cannot be liable for wrongful discharge." *Tex. Dept. Of Human Servs. Of State of Tex. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995) (emphasis in original). The employee has the trial burden of proving that his termination was for no reason other than the refusal to perform the illegal act. *Sabine Pilot*, 687 S.W.2d at 735.

Terracon argues that the record evidence shows that McClintock did not "require" Dodds to perform the illegal act of violating the DOT "hours of service" rule because Dodds could have complied with the rule and with McClintock's instructions. Terracon contends that if Dodds had returned to San Angelo and taken a hotel room, he could have stayed there for 34 hours, "reset" his 60-hour period under the DOT rule, and resumed work in San Angelo on Sunday morning, which was the "weekend." (Docket Entry No. 17, at 14). Terracon points to Dodds's testimony that he "could have gone back to San Angelo and gotten a hotel and been off duty for 34 hours" and still worked for part of the weekend on Sunday because of the saved travel time. (*Id.*, Ex. A, at 102, 105 (responding "Yes" to counsel's questions)).

Dodds responds that McClintock ordered him to "work the weekend," which a reasonable jury could interpret to mean on Saturday as well as Sunday. Because the DOT 60-hour rule prohibited Dodds from working at all until Sunday at approximately 5:00 a.m., Dodds contends that a reasonable jury could conclude that McClintock ordered him to violate the DOT rule and fired him for refusing to do so.

Terracon replies that McClintock told Dodds to get a hotel in San Angelo so "his hours could reset." (Docket Entry 18-6, ¶ 16). Dodds denies that McClintock said anything about "resetting his hours" or explained why he should get a hotel. Even if a jury finds that

8

McClintock ordered Dodds to work the weekend and to get a hotel room, the parties dispute how a reasonable person in Dodds's position would have interpreted that statement. (Docket Entry No. 19, at 10). When Terracon's counsel asked Dodds during his deposition if McClintock "mentioned [him] getting a hotel in response to [his] saying stuff about [his] DOT hours expiring," Dodds responded "I don't know if that's why he mentioned that." (Docket Entry No. 20, at 102). Dodds also testified that when he had previously stayed at a hotel on weekend work trips, he always worked through the weekend—both Saturday and Sunday. Dodds could not recall a job during which he was "about to hit [his] 60 hours and so [he] had to go take some time off and hang out in a hotel until [his] 34 hours expired," (*id.* at 108), and he did not interpret McClintock's statements to suggest this.

After their conversation, McClintock sent Dodds's project supervisor an email reporting that when Dodds said he "cannot work this weekend," he was told he "has too [sic]," and, if not, to report to Conroe with the rig and see McClintock first thing Monday. (Docket Entry No. 20, at 33). Terracon argues that McClintock did not instruct Dodds to begin working on specific days over the weekend, but the dispute as to what McClintock said and what Dodds reasonably understood his words to mean must be resolved in Dodds's favor at summary judgment.

Viewing the disputed summary judgment evidence in the light most favorable to Dodds, a reasonable jury could infer that McClintock ordered him to stay at a hotel in San Angelo *and* work through the weekend, including Saturday, which would have violated the DOT 60-hour rule. If a jury draws this inference from McClintock's instruction to "work the weekend," then it could reasonably conclude that Dodds was "unacceptably forced to choose between risking criminal liability or being discharged from his livelihood." *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 724 (Tex. 1990). The jury could also reasonably conclude that Dodds was fired solely for refusing to work weekend hours in a way that violated the DOT rule because

9

McClintock's email to human resources stated that Dodds was terminated for "ignor[ing] [McClintock's] instructions." (Docket Entry No. 20, at 37).

The evidence could also support an inference that McClintock told Dodds to get a hotel in San Angelo so that he could rest long enough to resume work in time to finish the West Texas job by Tuesday or Wednesday and then start The Woodlands job. If Dodds could have waited until Sunday morning to resume working on the West Texas job and finished it by Wednesday, he could have complied with McClintock's instructions to work "the weekend" without violating the DOT 60-hour rule by getting a hotel on Friday and Saturday and beginning work after approximately 5:00 a.m. Sunday. Under this interpretation, Dodds's termination for disobeying McClintock's "instructions" would not have been "solely" for refusing to perform an illegal act.

This factual dispute is material to determining the *Sabine Pilot* claim. Summary judgment is inappropriate on the record before the court.

### B. An Adequate Available Statutory Remedy

Terracon argues that even if there is a genuine factual dispute as to whether Dodds was fired for refusing to obey an order to violate the DOT 60-hour rule, "a *Sabine Pilot* claim does not exist in the first place" because "Congress has already provided Dodds a remedy if he was terminated for violating the DOT 'hours of service' rule." (Docket Entry No. 22, at 4; *see also* Docket Entry No. 17, at 16). Terracon contends that because Dodds could have sought relief under the Surface Transportation Assistance Act ("STAA"), *see* 49 U.S.C. § 31105 *et seq.*, he cannot pursue his *Sabine Pilot* claim.

The STAA provides that "[a] person may not discharge an employee . . . because . . . the employee refuses to operate a vehicle because . . . the operation violates a regulation . . . of the United States related to commercial motor vehicle safety, health, or security." 49 U.S.C. § 31105(a)(B)(i). An employee discharged in violation of the STAA may file an administrative

10

complaint with the Secretary of Labor, who can order the employer to rehire the employee and pay compensatory damages and punitive damages of up to $250,000. *See id.* § 31105(b)(3)(A)(i–iii), (B). If the Secretary of Labor does not issue a timely final order, the employee may bring an action for *de novo* review in United States District Court. *See id.* § 31105(c). If the Secretary issues a final order after a hearing, any person adversely affected by that order may file a petition for review in the appropriate United States Court of Appeals. *See id.* § 31105(d). The STAA states that "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement." *Id.* § 31105(g).

Texas state law recognizes *Sabine Pilot* as an exception to at-will employment. The availability of a *Sabine Pilot* claim prevents "employers from forcing employees to choose between illegal activity and their livelihoods." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 658 (Tex. 2012) (citing and discussing *Sabine Pilot*, 687 S.W.2d at 734-35); *see also Sawyer v. E.I. Du Pont De Nemours and Co.*, 430 S.W.3d 396, 399 (Tex. 2014) ("Texas courts have created only one" exception to the at-will doctrine: "prohibiting an employee from being discharged for refusing to perform an illegal act.").

Terracon argues that the "Texas Supreme Court has steadfastly refused to expand the *Sabine Pilot* doctrine." (Docket Entry No. 17, at 20 (citing cases)). The Texas cases Terracon cites did not involve a refusal to apply *Sabine Pilot* when, as here, the at-will employee alleges that he was terminated for refusing to violate a regulation and there is a statutory remedy enforcing that regulation. In *Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332-33 (Tex. 2006), and *Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.2d 723 (Tex. 1990), for example, the Texas Supreme Court refused to expand *Sabine Pilot* to cover plaintiffs who were "terminated for reporting illegal activities," not for refusing to "*commit* a crime." *Ed Rachal*,

11

207 S.W.3d at 323 (emphasis in original). And in *Simons Airlines v. Lagrotte*, 50 S.W.3d 748 (Tex. App. –Dallas 2001, pet. denied), the Texas Court of Appeals refused to "broaden the deliberately narrow exception [the Texas Supreme Court] created in *Sabine Pilot*" for at-will employees to apply to "a 'just cause' employee" protected by a collective bargaining agreement because it was "not for an intermediate appellate court to undertake to enlarge or extend the grounds for wrongful discharge under the employment-at-will doctrine." *See id.* at 752-53.

Terracon contends that the "plaintiff in *Sabine Pilot*," who was fired for refusing to pump bilges into water in violation of the Clean Water Act, "did not have an alternative statutory remedy." (Docket Entry No. 17, at 16). The court did not condition the *Sabine Pilot* exception on a showing that no other remedy applied. Indeed, it appears that the *Sabine Pilot* plaintiff could have initiated a formal proceeding or testified in a proceeding under the Clean Water Act's whistleblower provisions. *See* 33 U.S.C. § 1367(a), (b) (providing an administrative remedy scheme for employees who are fired for "filing, instituting, or testifying in proceedings under this chapter"). The Texas Supreme Court in *Sabine Pilot* not only allowed, but created, the narrow exception allowing at-will plaintiffs to bring a wrongful-discharge claim.

More recently, the Texas Supreme Court applied *Sabine Pilot* to a plaintiff allegedly fired for refusing to violate a DOT regulation. In *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655 (Tex. 2012), the plaintiff, a commercial truck driver, "repeatedly discovered safety violations in the vehicle he was asked to drive . . . but was consistently ordered to drive the truck anyway." *Id.* at 658. During one of these trips, he was "pulled over and cited by a [Texas] Department of Public Safety officer for numerous violations of state and federal regulations," including a federal regulation requiring cargo to be "firmly immobilized or secured on or within a vehicle by structures of adequate strength, dunnage or dunnage bags, shoring bars, tiedowns or a combination of these." *See* 49 C.F.R. § 393.106(b); *Safeshred*, 365 S.W.3d at 658. The plaintiff

12

showed the citation and described the problems to Safeshred management and "refused to drive the truck again until the defects had been remedied." *Id.* Safeshred did not fix the truck, but instead ordered the plaintiff to "either drive the truck or go home." *Id.* The plaintiff "went home and was fired." *Id.*

The plaintiff brought a wrongful-termination claim under *Sabine Pilot*, seeking lost wages, mental anguish damages, and exemplary damages. A state-court jury awarded all three. The Texas Court of Appeals vacated the mental anguish damages for insufficient evidence but affirmed the lost wages and punitive damages awards. The Texas Supreme Court concluded, as a matter of first impression, that a *Sabine Pilot* plaintiff "may recover punitive damages," *Safeshred*, 365 S.W.3d at 65, but reversed the punitive damages award because the plaintiff had not presented legally sufficient evidence of malice. The Texas Supreme Court affirmed the intermediate court's judgment in "all other respects," including the plaintiff's entitlement to lost wages for his wrongful discharge. *Id.* at 666.

Under Terracon's argument, the *Safeshred* plaintiff should not have been able to pursue his wrongful-termination claim or recover any damages because he could have used the STAA remedies for the DOT rule violation. *See* 49 U.S.C. § 31105(a)(1)(B)(i) (protecting employees against discharge if they "refuse to operate a vehicle because . . . the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security"). The Texas Supreme Court did not address the question Terracon raises here. But it allowed the *Safeshred* plaintiff to proceed on a *Sabine Pilot* claim despite the STAA remedy.

Because violating the DOT 60-hour rule subjected Dodds to potential criminal penalties, and because there is a genuine factual dispute as to whether he was fired solely for refusing to violate the 60-hour rule, *Sabine Pilot* applies. The question is not whether a *Sabine Pilot* claim

13

should "extend" to Dodds's case. Instead, the question is whether this court, rather than a Texas court, should recognize an exception for *Sabine Pilot* claims for which a statutory remedy is available and adequate. *Cf. Safeshred*, 365 S.W.3d at 660 ("Rather than expanding the claim, allowing punitive damages would merely avoid arbitrarily excluding a category of damages that is otherwise presumptively available.").

Terracon cites out-of-circuit cases refusing to recognize common-law wrongful-discharge claims when an employee has an available adequate statutory remedy. *See, e.g.*, *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 503-04 (7th Cir. 1999); *Bruffet v. Warner Comm'cns, Inc.*, 692 F.2d 910 (3d Cir. 1982); *Butler v. Sherman Silverstein & Kohl, P.C.*, 755 F. Supp. 1259, 1265 (D.N.J. 1990); *Chekey v. BTR Realty, Inc.*, 575 F. Supp. 715 (D. Md. 1983); *Jenkins v. Vestas-American Wind Tech., Inc.*, 2014 WL 1364971 (D. Or. Apr. 4, 2014). Putting aside the question whether the STAA offers an adequate alternative remedy,[2] these cases are not binding, and many are distinguishable.

Some of the cases Terracon cites involved different and more nebulous wrongful-discharge remedies than the narrow *Sabine Pilot* rule. *See Wiles*, 773 N.E.2d at 530 (considering the second element of Ohio's public-policy exception to at-will employment, which asks whether "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy").

Some of the cited cases required courts to decide whether to "recognize" or "extend" a common-law wrongful-discharge cause of action, not merely to apply a well-recognized exception such as *Sabine Pilot*. *See Wiles*, 773 N.E.2d at 531 ("[T]here is no need *to recognize* a

---

[2] *See Flenker v. Willamette Indus., Inc.*, 967 P.2d 295, 298 (Kan. 1998) (holding that Occupational Health & Safety Act, which does not provide a private right of action, does not preclude judicial recognition of a state claim for wrongful discharge in violation of public policy); *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 95-96 (Mo. 2010) (en banc) (holding that an employee fired for cooperating with an investigation into the employer's violations of the Fair Labor Standards Act could sue for wrongful discharge in violation of public policy because the statutory remedy did not "comprehend and envelop" the common-law cause of action).

14

common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." (emphasis added)); *Butler*, 755 F. Supp. at 1265 ("[B]ecause there already exists a statutory remedy for plaintiff, it would be inappropriate for this court *to extend* New Jersey common law in this case." (emphasis added)).

Some of the cases involved state, not federal, statutory remedies, again, unlike the facts of the present case. *See, e.g.*, *Groce*, 193 F.3d at 503 (rejecting the plaintiff's wrongful-termination claim based on Indiana's public-policy exception to at-will employment because "the Indiana legislature has created a specific statutory remedy for retaliatory discharge for complaining of a health or safety issue"). Others applied state case law that, unlike Texas case law, had prohibited common-law wrongful-discharge claims when an adequate statutory remedy exists. *See Bruffett*, 692 F.2d at 919 ("[T]he only Pennsylvania cases applying the public policy exception have done so where no statutory remedies were available."); *Jenkins*, 2014 WL 1364971, at *5 ("A plaintiff may not, however, bring a claim for the common law tort of wrongful discharge if he has an adequate statutory remedy." (citing *Walsh v. Consol. Freightways, Inc.*, 563 P.2d 1205 (Or. 1978)); *Chekey*, 575 F. Supp. At 716 ("Maryland courts have not recognized an abusive discharge cause of action when there exists a separate statutory remedy providing an exception to the terminable at will doctrine." (citing *Adler v. American Standard Corp.*, 432 A.2d 464 (Md. 1981)).

There is also authority contrary to the cases Terracon cites. *See, e.g.*, *City of Moorpark v. Superior Court*, 959 P.2d 752, 763-64 (Cal. 1998) (holding that an employee discharged for a disability caused by a workplace injury could bring a common-law wrongful-discharge claim despite statutory protections from the state's workers' compensation law and fair-employment law); *Gandy v. Wal-Mart Stores, Inc.*, 872 P.2d 859, 862 (N.M. 1994) (holding that an employee may bring a wrongful-discharge claim based on the public policy embodied in the state's Human

Rights Act despite statutory remedies because the statute contained no exclusivity language and offered different remedies).

Terracon argues that courts have found common-law wrongful-discharge claims based on the DOT "hours of service" rule precluded or preempted by the STAA remedy. (Docket Entry No. 17, at 18). Terracon cites *Johnson v. Lone Wolf Wireline, Inc.*, 2013 WL 1899920 (D. Utah May 7, 2013); *Rose v. Anderson Hay & Grain Co.*, 276 P.3d 382 (Wash. Ct. App. 2012), *review granted*, 343 P.3d 759 (Wash. Mar 4, 2015); *Mattingly v. Heartland Express, Inc.*, 2011 WL 886170 (N.D. Ind. March 14, 2011); *Dooijes v. K&B Transp., Inc.*, 2005 WL 1838962 (D. Or. Aug. 2, 2005); *Kornischuk v. Con–Way Central Express*, 2003 WL 21977202 (S.D. Iowa June 4, 2003). Most of these cases do not account for the STAA savings clause, which states that "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement." 49 U.S.C. § 31105(g). Putting that aside, finding the *Sabine Pilot* claim precluded or preempted by the STAA statutory remedy is also inconsistent with the Texas Supreme Court's recent decision in *Safeshred*, which allowed a *Sabine Pilot* claim for an at-will employee discharged for refusing to violate a DOT regulation. *See Safeshred*, 365 S.W.3d at 658, 666; 49 C.F.R. § 393.106(b); 49 U.S.C. § 31105.

In addition, some courts have refused to dismiss a wrongful-discharge claim on the basis of the STAA remedial provisions. *See, e.g.*, *Parten v. Consol. Freightways Corp.*, 923 F.2d 580, 582-83 (8th Cir. 1991) (applying Minnesota law and rejecting the defendant's argument that the STAA preempts an employee's wrongful-discharge action for refusing to violate state and federal statutes regulating truck safety); *Holdbrook v. SAIA Motor Freight Line, LLC*, 2011 WL 1518661, at *4 (D. Colo. Apr. 20, 2011) (refusing to dismiss the plaintiff's common-law wrongful-discharge claim based on his refusal to violate overlapping state and federal

16

transportation regulations despite the availability of the STAA as an alternative remedy because "none of the Colorado cases cited by [the defendant employer] specifically addresses the relationship between the STAA and wrongful discharge claims brought under similar state laws"); *Whitworth v. TNT Bestway Transp., Inc.*, 914 F. Supp. 1434, 1435-36 (E.D. Tex. 1996) (holding that the plaintiff's common-law claim that he was "terminated . . . solely because he refused to commit illegal acts" was not preempted because the "STAA was meant to act as a floor and not a ceiling of protection").

The forthcoming RESTATEMENT OF EMPLOYMENT LAW helpfully collects cases and analyzes the case law trends. *See* AMERICAN LAW INSTITUTE, RESTATEMENT OF THE LAW: EMPLOYMENT LAW § 5.01, Comment *e* (2015) (forthcoming June 2015). According to the last prepublication draft of the RESTATEMENT approved by the ALI, "[s]ome courts will find legislative intent to preclude common-law claims when a comprehensive statutory remedy scheme provides a remedy that adequately addresses the public interest the statute protects." *Id.* § 5.01, Comment *e* (citing cases). "Courts may be more reluctant," however, "to hold that a federal as opposed to state statute protecting workers impliedly preempts state common-law actions." *Id.* § 5.01, Comment *e* (citing cases). Some courts, "[r]ather than seeking indications whether the legislature impliedly intended to preclude common-law tort claims," take "the more straightforward approach of asking whether the common law should recognize a tort claim given the statutory scheme and its remedies." *Id.* § 5.01, Comment *e*. Although "[t]he clear trend among courts is to declare that an employee has no common-law wrongful-discharge claim if statutory remedies are adequate, . . . [n]ot all states bar claims of wrongful discharge in violation of public policy because an adequate statutory remedy is available." *Id.* § 5.01, Comment *e* (collecting cases).

The state of the case law may make it appropriate to certify the Texas Supreme Court the question of whether to recognize that a *Sabine Pilot* claim arising from a DOT regulation is precluded by the STAA's remedial scheme. But dismissing Dodds's claim on this basis would be inconsistent with the Texas Supreme Court's recent decision in *Safeshred*. The current state of the law in Texas makes it inappropriate for this court to dismiss the state-law *Sabine Pilot* claim based on the federal statutory remedy.

## IV.   Conclusion

Terracon's motion for summary judgment, (Docket Entry No. 17), is denied. The parties are ordered to appear for a pretrial scheduling conference on **May 26, 2015**, at 5:00 p.m., in Courtroom 11-B, 515 Rusk Street, Houston, Texas, 77002.

SIGNED on May 8, 2015, at Houston, Texas.

_____
                          Lee H. Rosenthal
                          United States District Judge